UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- X

FOLAKE OGUNDIRAN, Individually and as a Parent
of M.C.; MONIQUE JEFFREY, Individually and as a
Parent of B.S.; SHANICE GIVENS, Individually and as
a Parent of C.G.; and FOLAKE WINBUSH,              15 Civ. 7058
Individually and as a Parent of S.S.,

                                    Plaintiffs,              <u>COMPLAINT</u>

                    -against-                               <u>JURY TRIAL DEMANDED</u>

SUCCESS ACADEMY OF FORT GREENE;
SUCCESS ACADEMY CHARTER SCHOOLS, INC.;
NEW YORK CITY DEPARTMENT OF EDUCTION;
NEW YORK STATE DEPARTMENT OF
EDUCTION; and CANDIDO BROWN,

                                    Defendants.

-------------------------------------------------------------------- X

      Plaintiffs, as and for their complaint against Defendants Success Academy Charter

School of Fort Greene, the New York City Department of Education ("DOE"), and the New

York State Department of Education ("NYSED"), respectfully allege on knowledge as to

themselves and their own actions, and on information and belief as to all other matters, as

follows:

<u>SUMMARY OF THE ACTION</u>

    1.    Plaintiffs at all relevant times were parents of kindergarten and first grade

students with disabilities enrolled at Success Academy Fort Greene (sometimes herein called

"Success FG"), a charter school in Brooklyn, New York, who were injured by Defendants'

systemic failure to provide their children a free appropriate public education, in violation of their

rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*,

Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and N.Y. Educ. Law § 4401 *et seq.*, and by outrageous actions taken by the Success defendants in their efforts to push children with disabilities out of their school.

2.     Success Academy of Fort Greene is part of a network of schools operated by Success Academy Charter Schools, Inc. ("SACS").

3.     Success FG applies SACS's rigidly disciplinarian approach to students with disabilities without accounting for their special needs. The underlying philosophy at Success FG was, at all relevant times, that Success FG was required to accept students with disabilities but, once enrolled, these students must behave exactly as non-disabled students do. Officials of Success FG believe that to accommodate children with disabilities would be to give them "special lenience," which the SACS model does not allow. This approach has proven devastating to students with disabilities at Success FG, stunting their educational progress and emotional growth. Success FG regularly fails to provide students with disabilities accommodations they need in order to access education.

4.     The governmental entities that have an obligation to intervene have, instead, turned a blind eye. DOE is responsible for ensuring that students with disabilities receive a free appropriate public education without regard to whether they attend a charter school or a traditional public school. But DOE appears to view Success FG and other charter schools as falling outside its scope of responsibility: the  DOE gives SACS schools "free range" to provide its students with the necessary accommodations – or not.

5.     The Success Academy Fort Greene Defendants and DOE have violated the rights of Success Academy Fort Greene students with disabilities in at least two general ways:

a.     First, Success FG and DOE systematically fail to identify students with disabilities, which they are required to do. Success FG does not refer such students to DOE for evaluation, and DOE does not evaluate such students, even where parents have requested evaluations, or the students are routinely disciplined for behaviors stemming from recognizable disabilities and/or they are failing to make educational progress.

b.     Second, Success FG disciplines its students, starting in kindergarten, for behaviors that stem from their disabilities and which they cannot control, with the effect that these students are excluded from education, confined in timeout rooms and other unsuitable settings, and are shamed and humiliated, in many cases compounding the effects of their disabilities. Students are routinely suspended from school and parents are threatened with the possible arrest of their children or with a report to the Administration for Children's Services ("ACS") if they do not immediately remove their children from school premises.  In one case, one of the Plaintiffs' child was given to the police to be hospitalized because he misbehaved during a class trip.

6.     NYSED has allowed Success Academy Fort Greene and the DOE's violations to go unchecked, thereby abdicating NYSED's statutory responsibility to protect students with disabilities by ensuring compliance with the IDEA.

7.     To remedy these pervasive violations of federal and state law and outrageous actions, the Plaintiffs seek damages, as described more fully below.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, 20 U.S.C. § 1415(i)(2)(a), 29 U.S.C. § 794, and supplemental jurisdiction over the state

law claims pursuant to 28 U.S.C. § 1367. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. Plaintiffs also invoke this Court's pendent jurisdiction.

9.      Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 and 18 U.S.C. *§* 1965 because it is the judicial district in which Plaintiffs reside, in which Success Academy Fort Greene is located, and in which a substantial part of the events giving rise to Plaintiffs' claims occurred.

**PARTIES**

10.     Initials are used throughout this Complaint to preserve the anonymity of the children and the confidentiality of information about them, in conformity with Rule 5.2(a) of the Federal Rules of Civil Procedure, the privacy provisions of the IDEA, 20 U.S.C. § 1417(c), and of the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g.

11.     Plaintiff Folake Ogundiran is the mother of M.C., a minor residing in Brooklyn who, during the 2014-2015 school year, was a student at Success FG.

12.     Plaintiff Monique Jeffrey is the mother of B.S., a minor residing in Brooklyn who, during the 2014-2015 school year, was a student at Success FG.

13.     Plaintiff Shanice Givens is the mother of C.G., a minor residing in Brooklyn who, during the 2014-2015 school year, was a student at Success FG.

14.     Plaintiff Folake Winbush is the mother of S.S., a minor residing in Brooklyn who, during the 2014-2015 school year, was a student at Success FG.

15.     Defendant Success FG is a New York not-for-profit education corporation that operates a charter school elementary school in Fort Greene, Brooklyn. Success FG, upon information and belief, is a direct recipient of federal and state funds.

16.     Defendant SACS is a nonprofit organization incorporated in the state of New York. SACS is a charter management organization that operates Success FG and other Success Academy network schools, including by providing oversight, training, staffing and curricula for Success FG. Upon information and belief, SACS receives federal and state funds indirectly, from fees paid to it on a percentage basis by Success FG and other schools.

17.     Defendant DOE is the local educational agency ("LEA") responsible for Success FG's compliance with the IDEA, 20 U.S.C. § 1412 *et seq.*

18.     Defendant NYSED is the state educational agency ("SEA") responsible for IDEA compliance by New York public schools. The governing body of NYSED is the Board of Regents, which issued and oversees Success FG's charter. 20 U.S.C. §§ 1412(a)(l l); N.Y. Educ. Law §§ 305(1), 2851-52.

19.     Defendant Candido Brown was, at all relevant times, the principal of Success FG.

## BACKGROUND

I.   **Statutory and Regulatory Framework**

A.   **Education of Children with Disabilities**

20.     Several overlapping federal and state laws govern the education of children with disabilities in New York State. These laws include the federal IDEA, Section 504 of the federal Rehabilitation Act, and New York Education Law. In combination, these laws impose an overarching obligation on the Defendants to provide a "free appropriate public education" ("FAPE") to students with disabilities, including at least four component obligations at issue in this lawsuit:

    a.     the "child find" obligation, to identify such students;

    b.     the obligation to develop an appropriate IEP;

       c.       the obligation to implement an appropriate IEP; and

       d.       the obligation to refrain from punishing children for disability-related behaviors and from otherwise discriminating against them.

21.     The IDEA imposes upon each State that receives federal funds certain obligations to ensure that children with disabilities receive a FAPE. 20 U.S.C. § 1412(a)(l)(A). The IDEA defines a "child with a disability" to include children who require special education because of enumerated conditions including autism, learning disability, emotional disturbance and, for children between the ages of three and nine, because of developmental delays. 20 U.S.C. § 1401(3)(B); *see* N.Y. Comp. Codes R. & Regs. tit. 8, § 200.l(zz)(lO).

22.     Section 504 provides that individuals with disabilities shall not "be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Under Section 504, claims may be (1) brought by a "qualified person" *(i.e.,* an individual with a disability) (2) who was excluded from participation in a public entity's programs or was otherwise discriminated against by that entity, (3) if the discrimination was due to his or her disability. Section 504 defines "individual with a disability" to include a person with a physical or mental disability that impedes major life activities such as "learning, reading, concentrating, thinking, and/or communicating." 29 U.S.C. 794(a); 29 U.S.C. § 705(20)(B); 42 U.S.C. § 12102(1), (2)(A). Section 504 requires recipients of federal funds that operate public education programs, such as charter schools and networks, to provide a FAPE to children with disabilities. 34 C.F.R. § 104.33.

23.     Likewise, New York law requires that children with disabilities be "offered an opportunity to receive the benefits of an appropriate public education." N.Y. Educ. Law

§ 3204(4-a). New York law defines a "child with a disability" or "student with a disability" to include "a person under the age of twenty-one who, because of physical, mental, or emotional reasons can only receive appropriate educational opportunities from a program of special education." N.Y. Educ. Law § 4401(1).

24.     Under these statutory schemes, the obligation to provide a FAPE means the obligation to educate a child with a disability in the manner directed by the child's IEP, which can include special education and services. *See* 20 U.S.C. §§ 1401(9), 1414(d)(2); N.Y. Educ. Law §§ 3204; 4401.

25.     Under the IDEA, LEAs are responsible for developing IEPs and ensuring that students with disabilities receive the educational supports and services called for by those students' IEPs. 20 U.S.C. § 1414.

26.     The IDEA also provides that each State have an SEA that is "primarily responsible" for ensuring that IDEA requirements are met throughout the State. 20 U.S.C. § 1401(32); *see* 20 U.S.C. § 1412(a)(l l)(A).

27.     As the SEA in New York, NYSED is responsible for ensuring that all students within the State receive a FAPE, and that all schools in the state comply with the IDEA. 20 U.S.C. § 1412(a)(ll).

28.     <u>The Child Find Obligation</u>. Children with disabilities must be "identified, located, and evaluated" to determine whether they need special education and services. 20 U.S.C. § 1412(a)(3)(A); N.Y. Educ. Law § 4401-a. This "child find" duty is triggered whenever there is reason to suspect that a child has a disability and that special education services may be needed to meet the child's unique educational needs. *See* 34 C.F.R. § 300.11 l(c)(l ). A child's poor

academic performance and/or a pattern of disruptive behaviors can constitute reason to suspect the child has a disability.

29.     Upon a referral, DOE must conduct a full initial evaluation within sixty days. 20 U.S.C. § 1414(a)(l)(A)-(B); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(b)(l ).

30.     NYSED or DOE must ensure that reevaluations of students with disabilities are conducted at least once every three years. 20 U.S.C. § 1414(a)(2).

31.     <u>IEP Development</u>. An IEP is a written, up-to-date statement of a child's level of academic achievement; measurable annual goals for the child's progress; and a statement of the services, special education, supplementary supports, and program modifications that will be provided to support the child's progress, among other things. 20 U.S.C. § 1414(d)(l)(A); 34 C.F.R. § 300.320.

32.     An IEP must provide for special education and related services tailored to meet the unique needs of a particular child, and it must be reasonably calculated to enable the child to receive educational benefits. 20 U.S.C. § 1414(d)(l)(B).

33.     DOE is responsible for developing, reviewing, and periodically updating each child's IEP by convening a meeting of an "IEP team" that must include the child's parent(s), at least one of the child's general education teachers, at least one of the child's special education teachers or providers, a qualified representative of DOE, and, if appropriate, the child. 20 U.S.C. § 1414(d)(l)(B); N.Y. Educ. Law § 4402(l )(b)(2).

34.     DOE may not determine a child's placement or the other provisions of his IEP in advance of an IEP meeting, because to do so would deprive parents of the opportunity to meaningfully participate in the IEP process. *See* 34 C.F.R. 300.322.

35.     Each child with an IEP is entitled to receive the education, services, supplementary supports, and program modifications specified in the IEP.

36.     Each IEP must specify the educational setting in which the child is to be placed. These settings fall along a continuum from a general education classroom, which is the least restrictive setting, to more restrictive settings like special classes, classes with low student to teacher ratios, and classes at special education schools. 34 C.F.R. § 300.115.

37.     For example, a child's IEP may direct that she is to be placed in an Integrated Co-Teaching ("ICT"). classroom. To qualify as an ICT classroom, a classroom must have two teachers, one special education teacher and one general education teacher, who collaboratively instruct a group of students consisting of students with disabilities and students without disabilities; up to twelve of the students in an ICT classroom may be students with disabilities. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.6(g)( 1 -2).

38.     IEPs may also provide for a range of other services and accommodations . For example, they may provide that a child should receive services such as physical or occupational therapy, counseling, and speech and language therapy. They may direct that a child receive the assistance of a paraprofessional, who is a person assigned to an individual student to help with tutoring, classroom behavior, and instructional support, among other things. *See* 34 C.F.R. § 200.59. Or they may direct that a school provide the child extra time to take tests, test him or her in a separate location from other children, or give other testing accommodations. 34 C.F.R. § 300.320.

39.     Each IEP must indicate whether the student exhibits behaviors that are disruptive and/or interfere with learning and, if so, whether a functional behavioral assessment ("FBA") should be conducted and a Behavior Intervention Plan ("BIP") developed to support the

student's access to instruction notwithstanding the behaviors. 34 C.F.R. § 300.324; N.Y. Comp. Codes R. & Regs. tit. 8, § 200.22.

40.    A BIP is a written statement that includes "a description of the problem behavior, global and specific hypotheses as to why the problem behavior occurs and intervention strategies that include positive behavioral supports and services to address the behavior." N.Y. Comp. Codes R. & Regs. tit. 8, § 200.1.

41.    Even if the IEP team decides that a FBA need not be conducted for a child, if it finds that the child's behaviors are disrupting learning, the IEP team must consider how to use "positive behavioral interventions and supports, and other strategies." 20 U.S.C. § 1414(d)(3)(b)(i).

42.    <u>IEP Implementation</u>. IEPs must be implemented "as soon as possible" following the IEP meeting. 34 C.F.R. § 300.323(c)(2); N.Y. Comp. Codes R. & Regs. tit. 8, § 200.4(e)(l)(i).

43.    Like traditional public schools, charter schools must implement their students' lEPs. 34 C.F.R. § 300.209(a); N.Y. Educ. Law § 2854(1)(b). Charter schools may provide special education and services themselves or arrange to have the services provided by an outside contractor or by the school district. 34 C.F.R. § 300.209(a); N.Y. Educ. Law § 2853(4).

44.    <u>Limits on Discipline</u>. Under the IDEA and Section 504, schools may not apply disciplinary measures to students with disabilities in a manner that discriminates against those students or in a manner that is inconsistent with those students' IEPs and/or BIPs.

45.    New York law explicitly prohibits schools from placing students with disabilities in "timeout rooms" except as specifically authorized in those students' BIPs, and only if staff can

continuously see and hear the child and other conditions are met. N.Y. Comp. Codes R. & Regs. tit. 8, § 200.22.

46.     New York law further specifically prohibits the use of "aversive" interventions to respond to student behavior. "Aversive" interventions are those that are intended to induce pain or discomfort to change the student's behavior, including restrictions on movement through restraint devices, denial or delay of food, and painful or intrusive stimuli. N.Y. Comp. Codes R. & Regs. tit. 8, §§ 19.5(b),200.22(e).

47.     State and federal law also provides a child certain procedural rights when he or she is repeatedly removed from instruction for disciplinary reasons. When the time away from instruction totals more than ten days in a school year, the child has experienced a "change of placement," and is entitled to a "manifestation determination review" (MDR) to determine whether the problem behavior *"was* caused by, or had a direct and substantial relationship to, the child's disability." 20 U.S.C. § 1415(k)(l)(E); 34 C.F.R.§ 300.536(a); N.Y. Comp. Codes R. & Regs. tit. 8, § 20 l.4(a). If it is determined that the behavior was so related, the MDR participants must conduct a FBA and develop a BIP for the child. N.Y. Comp. Codes R. & Regs. tit. 8, §§ 200.1, 200.22.

**B.     Charter Schools**

48.     Charter schools are "independent and autonomous public school[s]." N.Y. Educ. Law § 2853(1)(c).

49.     Charter schools in New York receive state and federal funds, paid by the State. Charter schools receive additional funding for students with disabilities, "in proportion to the level of services for [each] student with a disability that the charter school provides directly or indirectly." N.Y. Educ. Law §§ 2856(b); 4410-b(4).

50.    Like traditional public schools, charter schools must comply with all laws and regulations regarding health, safety, civil rights, and special education, and they must educate children with special needs. N.Y. Educ. Law § 2854(l)(b). This last obligation requires charter schools to provide a FAPE to children with disabilities and to implement students' IEPs. 34 C.F.R. § 300.209(a); N .Y. Educ. Law § 2853(4); N.Y. Educ. Law § 2854(1)(b) .

51.    NYSED is responsible for overseeing each charter school to "ensure that the charter school is in compliance with all applicable laws, regulations and charter provisions," including special education laws. N.Y. Educ. Law § 2853(2). NYSED can take punitive action against a school for noncompliance , including by terminating or refusing to renew the school's charter. N.Y. Educ. Law §§ 2855, 2857.

52.    In New York, a charter school's LEA for IDEA purposes is the local school district. N.Y. Educ. Law § 2853(4)(a).

53.    DOE has created "Committee on Special Education" ("CSE"), which is responsible for developing IEPs for public and charter students at schools within the CSE's jurisdiction, including charter schools such as Success FG. *See* N.Y. Educ. Law § 4402(1)(b)(l).

## II.    **SACS Defendants**

54.    SACS expects its schools to accept no excuses for infractions of its code of conduct, requiring that teachers and school personnel consistently and predictably punish students for every infraction of the school's code of conduct, however minor.

55.    SACS ensures that its schools, including Success FG, execute the SACS mission through, among other things, centralized hiring and staffing decisions and training for teachers and other school employees. Upon information and belief, teachers' evaluations under the are based in significant part on the extent to which they catch, and punish, all infractions.

56.     Consistent with SACS' philosophy, Success FG imposes, in an absolute and unwavering manner, a pre-determined punishment for every infraction of the code of conduct, regardless of individual circumstances. Success FG expects and requires its teachers to punish students for minor infractions of the school's code of conduct, such as the requirement that students fold their hands atop their desks during most class time, without regard to whether students have disabilities that make it impossible for them to perform those behaviors, and without regard to those students' right to accommodations.

57.     This emphasis on rigid discipline clashes with SACS' legal obligations to students with disabilities.

58.     Upon information and belief, neither SACS nor Success FG expects or requires its teachers to comply with students' IEPs or to otherwise accommodate students with disabilities.

59.     SACS is legally responsible for Success FG's violations of law.

## FACTS CONCERNING CHILDREN OF THE NAMED PLAINTIFFS

### Folake Ogundiran ("F.O.")

60.     M.C. was born to Folake Ogundiran in 2008 and began attending Success FG as a kindergarten student in the fall of 2013.

61.     M.C. had a hard time with her initial adjustment to the strict discipline of Success FG. Within two weeks F.O. was receiving calls to pick her up for "bad behavior." Calls came about three days out of every five. This continued throughout the kindergarten year.

62.     F.O. was unable to place M.C. elsewhere prior to first grade.  M.C. began to be placed in a "buddy class," which was a kindergarten class, when he would "misbehave," and would run away from the teacher bringing him to that class.

63.     On December 10, 2014, F.O. got a call from principal Candido Brown, who stated: "She is having an especially hard day today. We are going to have to call the police."

64.     F.O., who was terrified by this statement, went to the school, took M.C. out, and did not allow her to return. M.C. started a new school in January 2015.

65.     F.O. learned, subsequently, that M.C. was on Candido Brown's "Got to Go" list. Upon information and belief, Mr. Brown and other officials at Success FG and SACS decided to use a threat to call police as a means to compel parents of learning disabled children to leave the school.

Monique Jeffrey ("M.J.")

66.     B.S., M.J.'s son, began Success FG at age five, in kindergarten.

67.     After about six weeks, M.J. began to receive calls: B.S. is not sitting with his hands folded. B.S. is gazing off while the teacher is reading.

68.     On several occasions M.J. received calls from teachers at Success FG which included threats to call the police. On one occasion, in May 2015, when B.S.'s father arrived to pick him up, the father was told that the school was considering a lengthy suspension from school for B.S. because the father was "late."

69.     M.J. withdrew B.S. from school in May 2015.  M.J. later learned that B.S. was also on Defendant Brown's "Got to Go" list.

Folake Winbush ("F.W.")

70.     S.S., F.W.'s son, was diagnosed with a learning disability, but while at Success FG never received an IEP.

71.     During his year in kindergarten at Success FG, S.S. was repeatedly suspended and punished for disruptive behavior.

72.     In May 2015, S.S. was on a field trip to the Museum of Natural History and was taken, at his teacher's request, by the police, to the hospital.

73.     F.W. withdrew S.S. from Success FG at the end of the 2014-2015 school year. F.W. later learned that S.S. was on Defendant Brown's "Got to Go" list.

Shanice Givens ("S.G.")

74.     C.S., S.G.'s son, has been diagnosed with autism. While attending kindergarten at Success FG, C.S. did not receive an IEP.

75.     Repeatedly, while attending kindergarten, S.G. received calls from officials at Success FG telling her to pick up her child from school. On one occasion, in or around January 2015, S.C. was told that if she did not pick up C.S. within 20 minutes, the ACS would be called to take custody of the child.

76.     On another occasion, C.S. was physically lifted out of a chair by a teacher for not following instruction.

77.     After one year at Success FG, S.G. withdrew C.S. from the school.  S.G. later learned that C.S. was on Defendant Brown's "Go to Go" list.

## SACS AND IEPs AT SUCCESS FG

78.     SACS does not have effective policies or procedures to ensure consistent identification and referral to DOE for evaluation of children with known or suspected disabilities.

79.     SACS does not effectively train the teachers or staff at Success FG to identify or refer students to DOE for evaluation of known or suspected disabilities.

80.     Upon information and belief, SACS has a practice of failing to timely refer for evaluation students at Success FG whose parents have requested evaluations.

81.     SACS has a policy and practice of failing or refusing to adapt Success FG's strict code of conduct to accommodate students with disabilities, and the SACS-affiliated schools have a practice of punishing students with disabilities for behaviors that SACS know or should know are caused by, or have a direct and substantial relationship to, the students' disabilities.

82.     SACS has a policy and practice of failing to make determinations required by law about whether an Success FG student's educational placement has been changed because the student has spent ten total days during a school year away from instruction because of behavior-related removals.

83.     SACS had, at all relevant times, a policy and practice of sending Success FG students with disabilities to timeout rooms in a manner that is not authorized by law.

84.     These policies and practices deny students at Success FG a FAPE.

85.     These policies and practices discriminate against Success FG students with disabilities.

86.     In engaging in these policies and practices, SACS and Success FG have acted with deliberate or reckless indifference to students' federally protected rights, with bad faith, and/or with gross misjudgment.

### **DOE**

87.     DOE has a practice of failing to identify and/or refer for evaluation Success FG students that DOE knows or has reason to suspect have disabilities, including students whose parents have requested evaluations; whose academic performance has fallen below grade level; who are failing to make academic progress; who are not promoted from one grade to the next, sometimes repeatedly; and/or who routinely manifest, and are disciplined for, behaviors that stem from recognizable disabilities.

88.     DOE has a practice of failing to conduct timely evaluations of Success FG students with known or suspected disabilities.

89.     DOE has a practice of failing to conduct IEP meetings for Success FG students in the manner required by law, including by:

a.     failing to ensure attendance and participation by the student's teachers and other individuals required by law;

b.     depriving the student's parent(s) of a meaningful opportunity to participate in developing the student's IEP;

c.     failing to ensure that the IEP is based on adequate information and an accurate classification of the student, including an up-to-date evaluation;

d.     failing to consider meaningfully whether a student's behaviors interfere with his or her education and failing to develop BIPs where required by law; and

e.     approving, permitting, or deciding that a student's IEP will direct placement of a student at Success FG without regard to whether Success FG offers an educational setting that is appropriate for the student's needs, and/or directs such placement even though Success FG does not offer, and does not intend to create, an educational setting that is appropriate for the student's needs.

90.     DOE has a practice of failing to timely produce IEPs and of failing to ensure that the IEPs of Success FG students are provided to parents and teachers.

91.     DOE has a practice of failing to conduct MDRs for students at Success FG whose educational placement has been changed.

92.     DOE has a practice of failing to conduct FBAs for students at Success FG where required by law.

93.     DOE has a policy and/or practice of failing to take the steps necessary to ensure that Success FG students are receiving the special education and services mandated by those students' IEPs, which, as the LEA, DOE is required to do.

94.     In engaging in these practices, DOE has acted with deliberate or reckless indifference to students' federally protected rights, with bad faith, and with gross misjudgment.

### SED

95.     Despite repeated reports about mistreatment of children with disabilities, SED has failed to take action against DOE, SACS, and Success FG.

### FIRST CAUSE OF ACTION
**(IDEA, 20 U.S.C. § 1400 *et seq.,* and implementing regulations)**
***Against Success FG and SACS***

96.     Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 95 above.

97.     Defendant Success FG has denied a FAPE to Plaintiffs' children in violation of the IDEA, 20 U.S.C. § 1400 *et seq.,* along with its implementing regulations, 34 C.F.R. § 300 *et seq.,* by:

      a.     failing to identify or refer for evaluation students known or suspected to have disabilities;

      b.     failing to implement students' IEPs;

      c.     disciplining Success FG students with disabilities for behaviors that violate SACS' code of conduct and failing or refusing to take the steps required by law to accommodate students' disabilities.

98.     Defendant SACS has denied a FAPE to Plaintiffs' children in violation of the IDEA, 20 U.S.C. § 1400 *et seq.,* along with its implementing regulations, 34 C.F.R. § 300 *et seq.,* in the following ways:

a.      through its hiring, training, staffing, and/or supervision of teachers and staff at Success FG, causing, in whole or in part, Success FG's failure to identify or refer for evaluation students known or suspected to have disabilities;

b.      through its hiring, training, staffing, and/or supervision of teachers and staff at Success FG, causing, in whole or in part, Success FG's failure to ensure that students' IEPs are implemented; and

c.      developing SACS' code of conduct and directing Success FG to enforce it fully and strictly, without accommodating students with disabilities.

## SECOND CAUSE OF ACTION
### (IDEA, 20 U.S.C. § 1400 *et seq.,* and implementing regulations)
#### *Against DOE*

99.   Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 98 above.

100.   Defendant DOE has denied a FAPE to Plaintiffs' children in violation of the IDEA, 20 U.S.C. § 1400 *et seq.,* along with its implementing regulations, 34 C.F.R. § 300 *et seq.,* by:

a.      failing to identify or evaluate students known or suspected to have disabilities, and failing to conduct reevaluations as required by law;

b.      improperly developing IEPs;

c.      failing to conduct MDRs and FBAs as required by law; and

d.      failing to take the steps necessary to ensure that students at Success FG are receiving the special education and services mandated by those students' IEPs.

## THIRD CAUSE OF ACTION
### (IDEA, 20 U.S.C. § 1400 *et seq.,* and implementing regulations)
#### *Against NYSED*

101.   Plaintiffs repeat and reallege the allegations in Paragraphs **1** through 100 above.

102.    NYSED is New York 's SEA under the IDEA. It is therefore responsible for ensuring that IDEA requirements are met throughout the State.

103.    As the SEA, NYSED has denied a FAPE to the Plaintiffs's children in violation of the IDEA, 20 U.S.C. § 1400 *et seq.,* along with its implementing regulations, 34 C.F.R. § 300 *et seq.,* by:

a.    failing to ensure that SACS and Success FG comply with the requirements of the IDEA and meet the educational standards of the SEA; and

b.    failing to ensure that DOE complies with the requirements of the IDEA and meets the educational standards of the SEA.

<u>**FOURTH CAUSE OF ACTION**</u>
**(Section 504, 29 U.S.C. *§* 794(a), and implementing regulations)**
***Against Success FG and SACS***

104.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 103 above.

105.    Defendants Success FG and SACS are subject to Section 504 because they receive federal financial assistance.

106.    Defendant Success FG has discriminated against the Plaintiffs' children in violation of Section 504 of the Rehabilitation Act and implementing regulations by denying Plaintiffs' children a FAPE, subjecting Plaintiffs to discrimination, excluding Plaintiffs' children from participation in educational programs receiving federal assistance, and denying Plaintiffs' children the benefits of those programs, solely by reason of Plaintiffs' children's disabilities, in the following ways:

a.    failing to identify or refer them for evaluation;

b.    failing to implement an IEP; and

c.      punishing Plaintiffs' children with disabilities for behaviors that violate SACS' code of conduct and failing or refusing to take the steps required by law to accommodate students' disabilities.

107.    Defendant SACS has discriminated against Plaintiffs's children in violation of Section 504 of the Rehabilitation Act and its implementing regulations by denying Plaintiffs' children a FAPE, subjecting Plaintiffs' children to discrimination, excluding Plaintiffs' children from participation in educational programs receiving federal assistance, and denying Plaintiffs' children the benefits of those programs, solely by reason of Plaintiffs' children's disabilities in the following ways:

a.      through its hiring, training, staffing, and/or supervision of teachers and staff at Success FG, causing, in whole or in part, Success FG's failure to identify or refer for evaluation students known or suspected to have disabilities;

b.      through its hiring, training, staffing, and/or supervision of teachers and staff at Success FG, causing, in whole or in part, Success FG's failure to implement students' IEPs;

c.      developing the SACS code of conduct and directing Success FG to enforce it fully and strictly despite federal and state law.

108.    In committing these violations, SACS and Success FG have acted in bad faith and exercised gross misjudgment, and have acted with deliberate or reckless indifference to Plaintiffs' children's federally protected rights.

## FIFTH CAUSE OF ACTION
### (Section 504, 29 U.S.C. § 794(a), and implementing regulations)
### *Against DOE*

109.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 108 above.

110.     Defendant DOE is subject to Section 504 because it receives federal financial assistance.

111.     Defendant DOE has discriminated against the Plaintiffs' children in violation of Section 504 and its implementing regulations by denying Plaintiffs a FAPE, subjecting Plaintiffs' children to discrimination, excluding Plaintiffs' children from participation in educational programs receiving federal assistance, and denying Plaintiffs' children the benefits of those programs, solely by reason of Plaintiffs' children's disabilities in the following ways:

a.     failing to identify or evaluate students known or suspected to have disabilities, and failing to conduct reevaluations as required by law;

b.     improperly developing IEPs;

c.     failing to conduct MDRs and FBAs as required by law; and

d.     failing to take the steps necessary to ensure that students at Success FG are receiving the special education and services mandated by those students' IEPs.

112.     In committing these violations, DOE has acted in bad faith and exercised gross misjudgment, and has acted with deliberate or reckless indifference to Plaintiffs' children's federally protected rights.

**SIXTH CAUSE OF ACTION**
**(N.Y. Educ. Law § 4401 *et seq.* and implementing regulations; N.Y. Educ. Law § 2853(4))**
***Against Success FG and SACS***

113.     Plaintiffs repeat and reallege the allegations in Paragraphs 1through 112 above.

114.     Defendant Success FG has violated the rights of Plaintiffs' children under the New York Education Law and its implementing regulations in the following ways:

a.     failing to identify or refer for evaluation students known or suspected to have disabilities;

      b.      failing to implement students' IEPs; and

      c.      disciplining Success FG students with disabilities for behaviors that violate SACS' code of conduct and failing or refusing to take the steps required by law to accommodate students' disabilities.

115.    Defendant SACS has violated the rights of Plaintiffs' children under the New York Education Law and its implementing regulations in the following ways:

      a.      through its hiring, training, staffing, and/or supervision of teachers and staff at Success FG, causing, in whole or in part, Success FG's failure to identify or refer for evaluation students known or suspected to have disabilities;

      b.      through its hiring, training, staffing, and/or supervision of teachers and staff at Success FG, causing, in whole or in part, Success FG's failure to ensure that students' IEPs are implemented; and

      c.      developing SACS' code of conduct and directing Success FG to enforce it fully and strictly, despite federal and state law.

**<u>SEVENTH CAUSE OF ACTION</u>**
**(N.Y. Educ. Law § 4401 *et seq.* and implementing regulations; N.Y. Educ. Law § 2853(4))**
***Against DOE***

116.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 115 above.

117.    Defendant DOE has engaged in the following policies and practices in violation of the New York Education Law and implementing regulations:

      a.      failing to identify or evaluate students known or suspected to have disabilities, and failing to conduct reevaluations as required by law;

      b.      improperly developing IEPs;

      c.      failing to conduct MDRs and FBAs as required by law;

       d.      failing to take the steps necessary to ensure that students at Success FG are receiving the special education and services mandated by those students' IEPs.

### EIGHTH CAUSE OF ACTION
**(Intentional Infliction of Emotional Distress)**
***Against Defendants Brown, Success FG, and SACS***

118.    Plaintiffs repeat and reallege the allegations in Paragraphs 1 through 117 above.

119.    Defendants Brown and Success FG's actions as aforedescribed were outrageous and extreme, were undertaken solely to cause severe emotional distress to Plaintiffs so that they would withdraw their children from Success FG, and did cause each plaintiff parent and their children severe emotional distress.

### DAMAGES

120.    As a direct and proximate consequence of the aforedescribed actions and inactions, each Plaintiff and each child of a Plaintiff:

       a.      Suffered severe emotional distress.

       b.      Suffered a year-long loss of educational opportunity.

121.    Because the aforedescribed actions of Defendants were done with, minimally, a reckless disregard of the rights of Plaintiffs' children, Plaintiffs and their children are entitled to punitive damages.

**WHEREFORE,** Plaintiffs respectfully pray that this Court enter judgment:

1.      Declaring that:

a.      Defendant Success FG denied a FAPE to Plaintiffs' children in violation of the IDEA, 20 U.S.C. *§* 1400 *et seq.,* along with its implementing regulations, 34 C.F.R. § 300 *et seq.;*

b.      Defendant SACS has denied a FAPE to Plaintiffs' children in violation of the IDEA, 20 U.S.C. § 1400 *et seq.,* along with its implementing regulations, 34 C.F.R. *§* 300 *et seq.;*

c.      Defendant DOE has denied a FAPE to Plaintiffs' children in violation of the IDEA, 20 U.S.C. *§* 1400 *et seq.,*along with its implementing regulations, 34 C.F.R. § 300 *et seq.;*

d.      Defendant NYSED has denied a FAPE to the Plaintiffs' children in violation of the IDEA, 20 U.S.C. *§* 1400 *et seq.,* along with its implementing regulations, 34 C.F.R. § 300 *et seq.*;

e.      Defendant Success FG has discriminated against the Plaintiffs' children in violation of Section 504 of the Rehabilitation Act and implementing regulations by denying Plaintiffs' children a FAPE, subjecting Plaintiffs' children to discrimination, excluding Plaintiffs' children from participation in educational programs receiving federal assistance, and denying Plaintiffs' children the benefits of those programs, solely by reason of Plaintiffs' children's disabilities;

f.      Defendant SACS has discriminated against Plaintiffs' children in violation of Section 504 of the Rehabilitation Act and its implementing regulations by denying Plaintiffs' children a FAPE, subjecting Plaintiffs' children to discrimination, excluding Plaintiffs' children

from participation in educational programs receiving federal assistance, and denying Plaintiffs' children the benefits of those programs, solely by reason of Plaintiffs' children's disabilities;

       g.    Defendant DOE has discriminated against the Plaintiffs' children in violation of Section 504 of the Rehabilitation Act and its implementing regulations by denying Plaintiffs' children a FAPE, subjecting Plaintiffs' children to discrimination, excluding Plaintiffs' children from participation in educational programs receiving federal assistance, and denying Plaintiffs' children the benefits of those programs, solely by reason of Plaintiffs' children's disabilities;

       h.    Defendant Success FG has violated the rights of Plaintiffs' children under the New York Education Law and its implementing regulations;

       i.    Defendant SACS has violated the rights of Plaintiffs' children under the New York Education Law and its implementing regulations; and

       j.    Defendant DOE has violated the rights of Plaintiffs' children under the New York Education Law and its implementing regulations;

2.    Awarding:

       a.    actual and/or compensatory damages against all Defendants in an amount to be proven at trial;

       b.    emotional distress paid jointly and severally against Success FG and Brown in the sum of $500,000 to each Plaintiff; and

       c.    reasonable attorney's fees pursuant to 20 U.S.C. § 1415(i)(3)(B)(i)(I); and

3.    Granting such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.


Dated:  New York, New York
        December 10, 2015


                                             ADVOCATES FOR JUSTICE,
                                             CHARTERED ATTORNEYS
                                             Attorneys for Plaintiffs


                                           By:_____/s/_____
                                                Arthur Z. Schwartz (AZS 2683)
                                                  Laura D. Barbieri
                                                  225 Broadway, Suite 1902
                                                  New York, New York 10007
                                                  (212) 285-1400
                                                  aschwartz@afjlaw.com
                                                  lbarbieri@advocatesny.com